## CASH v. PORTLAND RY. L. & P. CO.

(179 Pac. 909.)

**Appeal and Error—Review—Findings of Court.**

1. Findings of court which tried a case without a jury on appeal must be deemed and treated as the verdict of a jury.

**Principal and Agent—Authority to Compromise and Make Settlement.**

2. An agreement between an electric light and power company's customer and her agent that the agent was to check up and audit

customer's bills for light and power between certain dates, for which services the agent was to be paid 50 per cent of all money returned or credited to her account by reason of errors or overcharges, *held* to give the agent power to agree with the company as to the amount it should repay the customer on account of errors and overcharges and to include authority to make settlement.

[As to general rules controlling the authority of agents, see note in 16 Am. St. Rep. 493.]

**Electricity—Overcharge—Treble Damages—"Person Injured" — Compromise.**

3. Within Public Utilities Act, Sections 67 and 75, authorizing recovery of treble damages by "person injured" for overcharge by public utility, customer of light and power company was not "injured" where customer contracted with an agent for discovering overcharges, and agent made a settlement, as authorized to do, for the amount of overcharge discovered.

**Words and Phrases—"Refund."**

4. "Refund" means to give back, to repay, to restore, to supply again with funds, to reimburse, to return in payment or compensation for what has been taken, or the repayment or return of money.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

This is an action against the defendant, a public service corporation, to recover treble damages under section 67 of the Public Utilities Act (Laws 1911, Chap. 279, page 483), which was tried before the Circuit Court without a jury, resulting in numerous findings of fact based upon which judgment was rendered in favor of the defendant.

The plaintiff as the operator of a hotel on Salmon Street in Portland entered into a lighting contract with the defendant on September 19, 1913, for the period of one year, and on the same day, for the same period, entered into another contract for electric power to operate the elevator in the hotel. Separate connections were made and electric current was furnished through separate meters. On September 26, 1914, new and distinct lighting and power contracts were executed and remained in force until July 31, 1916, when a

single contract embracing both light and power was executed. On November 29, 1913, the defendant filed its tariff sheet with the then Railroad Commission of Oregon, in which was a "combined light and power schedule" which provided that where the light furnished to a customer using both light and power service did not exceed 50 per cent of the total, the power rate only should be applied to the combined light and power charges. This schedule was in effect until July 17, 1916. Between November 29, 1913, and July 17, 1916, the lighting demand of the plaintiff did not exceed 50 per cent of combined light and power used by her, and under such tariff provision she was entitled to the combined light and power rate. Nevertheless, separate charges were made for the light and power consumed, as a result of which during that period she was overcharged and overpaid the defendant the sum of $143.23.

For several years J. M. Trobert was an employee of the defendant and on March 5, 1917, while then out of its employ, he entered into a contract with the plaintiff to check and audit the bills which had been rendered her by the defendant between the dates mentioned, for which service he was to receive 50 per cent of any money returned to the plaintiff on account of overcharge. He applied to the defendant and was given free access to its books and records and was accorded every facility for investigation, as a result of which it was found that the defendant had overcharged the plaintiff $143.23. On May 29, 1917, the defendant issued its voucher in favor of the plaintiff for that amount and about that date delivered it to Trobert as her agent. The plaintiff has ever since retained and now has the voucher.

On August 2, 1917, this action was commenced to procure a judgment for three times the amount of the overcharge, Trobert's expenses, the sum of $100 as attorneys' fee, and costs. The plaintiff relies upon section 67 of the Public Utilities Act for her right to maintain the action.

The defendant in its answer admitted the filing of the schedule, pleaded the execution of written contracts and averred that the plaintiff voluntarily made her payments; that it had a large number of customers under such schedule; that "through error and inadvertence and without any willfulness, wantonness or evil design on its part" the defendant failed to notice that the plaintiff's installation and demand were such as to entitle her to the combined light and power schedule; that the defendant "voluntarily and prior to the commencement of this action repaid to plaintiff as a full and complete settlement, all sums charged plaintiff and paid by her under said combined light and power schedule, and by reason thereof plaintiff sustained no damage as a result of defendant's action," and that "said defendant in said entire matter acted honestly and in good faith, without intention of injuring plaintiff, or of violating said Public Utilities Act."

A reply was filed and testimony was taken. The trial court found that there was an overcharge in manner and form as claimed by the defendant, made findings of fact as to an agreement upon the amount of the overcharge and the payment thereof and rendered judgment in favor of the defendant, from which the plaintiff appeals, contending that under such findings of the trial court she is entitled to judgment for treble damages as prayed for in her complaint. There is no allegation of fraud or of any effort on the part of the defendant to conceal the overcharge, or that the officers

of the defendant had any knowledge thereof, except in so far as it appears on the account-books of the corporation. · AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. J. G. Arnold.*

For respondent there was a brief over the name of *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Rufus A. Leiter.*

JOHNS, J.—1. The case was tried without a jury. The testimony is not before this court. There is no question about any of the findings made by the trial court and it is elementary that they must be deemed and treated as the verdict of a jury.

2-4. The plaintiff claims three times the amount of the overcharge of $143.23, three times $71.62, which she had agreed to pay Trobert for his services, making a total of $644.55, together with $100 as attorneys' fee, and costs. There is no dispute as to the amount of the overcharge. That was agreed upon after the investigation was made. The plaintiff bases her claim upon section 67 of the Public Utilities Act, which is as follows:

"If any public utility shall do or cause to be done or permit to be done any matter, act or thing in this act prohibited, or declared to be unlawful, or shall omit to do any act, matter or thing required to be done by it, such public utility shall be liable to the person, firm or corporation injured thereby in treble the amount of damages sustained in consequence of such violation, together with a reasonable counsel's or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case; *provided,* that any recovery as in this section provided shall in no manner effect (affect)

recovery by the State of the penalty prescribed for such violation.''

It appears from the findings that on March 5, 1917, the plaintiff entered into a written agreement with J. M. Trobert, a late employee of the defendant, by which he was to check and audit all bills rendered or charges made against the plaintiff for electric light and power furnished from November 29, 1913, to May 15, 1916, for which services the plaintiff was to pay him 50 per cent of all money returned to her or credited to her account by reason of any errors or overcharges. Finding number 11 is as follows:

''That thereafter said J. M. Trobert requested defendant to check and audit plaintiff's account with defendant, and said J. M. Trobert and defendant, by one of its employees, jointly investigated into said account and the basis of charges thereof, and it was agreed between said J. M. Trobert, as plaintiff's agent, and said defendant that an improper application of the tariff rate had been made in the bills rendered to and paid by plaintiff, by reason whereof plaintiff was entitled to a refund from defendant in the sum of $143.23; that no demand was then, or at any time, made by plaintiff or by her agent, J. M. Trobert, upon the defendant for the payment of any other or different sum from the sum of $143.23, except as contained in the complaint filed in this action.''

From number 12 it appears that on May 29, 1917, the defendant issued its voucher in favor of the plaintiff for $143.23 and delivered it to her agent, J. M. Trobert, ''as a full and complete settlement of all sums charged plaintiff and paid by her in excess of the sums proper to be charged plaintiff and paid by her under said combined light and power schedule aforesaid, and of plaintiff's claim against defendant.'' Finding 13 reads thus:

"That this action was instituted on or about August 2, 1917. That plaintiff held said voucher from on or about May 29, 1917, without presenting the same to the bank upon which it was drawn, for payment, and without notifying defendant that the amount thereof was unsatisfactory or insufficient, or that she would not accept or receive the same in full settlement of her claim against defendant, until after the commencement of this action, and after the filing of defendant's answer herein, when on August 24, 1917, plaintiff's attorney by letter advised defendant that said voucher had not been cashed by her and would not be cashed because she did not feel that it was the full amount due her; that she had not accepted such sum and would not accept such sum in full payment of her claim against defendant; that the voucher had been held since it was sent to her, and would be held without any presentment for payment."

Under his contract Trobert was to receive one half of all moneys which he collected from the defendant, and had authority from the plaintiff to ascertain and determine the amount of any errors or overcharges. The authority to determine this amount and collect it and to retain one half thereof when so collected, for his services, carried with it the power to agree with the defendant as to the amount which it should repay to the plaintiff on account of such errors and overcharges and would include the authority to make a settlement. It appears from finding number 11 that Trobert, as agent of the plaintiff, agreed with defendant that "an improper application of the tariff rate had been made in the bills rendered to and paid by plaintiff," and that by reason thereof "plaintiff was entitled to a refund from defendant in the sum of $143.23." Webster defines the word "refund" thus: "to give back, to repay, to restore, to supply again with funds, reimburse." In the Century Dictionary the word is

defined as follows: "to return in payment or compensation for what has been taken, repay, restore; repayment, return of money." Hence, under such findings it was agreed by the plaintiff, through Trobert, her authorized agent, and the defendant that the plaintiff should have and the defendant should "return in payment or compensation for what had been taken," "repay" or "restore" $143.23. Prior to the commencement of this action no demand was made for any other or different sum, and it appears from finding number 12 that the voucher was issued "as a full and complete settlement of all sums charged the plaintiff and paid by her in excess of the sums proper to be charged plaintiff," and that she has ever since held and now retains the voucher.

Construing the findings of fact, the plaintiff through her agent agreed with the defendant upon the amount which was due and owing to the plaintiff on account of errors and overcharges and that the defendant should return "in payment or compensation" therefor, "give back" or "repay" the sum of $143.23, and pursuant to such agreement the defendant issued and delivered its voucher for that amount to the plaintiff, which she received and retained for more than two months without any notice, protest or objection. Based upon that agreement, plaintiff claimed, more than two months after the voucher was delivered, that she was entitled to recover triple the amount which she, through her agent, agreed should be repaid by the defendant.

Section 67 of the Public Utilities Act provides that "such public utility shall be liable to the person, firm or corporation injured thereby, in treble the amount of damages sustained in consequence of such violation," etc. How can the plaintiff consistently claim or assert that she was "injured thereby" when, through her

agent, she agreed upon the amount which was to be returned to her ''in payment or compensation for what had been taken'' on account of the errors or overcharges?  Section 75 of the act has the following heading: ''Substantial compliance with act sufficient; technical omissions immaterial; liberal construction.'' This title is made a part of the Section and as to its meaning should be construed with it.   The Section says:

''The provisions of this act shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities.''

Applying such provisions to the findings, we do not know upon what theory the plaintiff is now entitled to recover as damages treble the amount which she agreed should be returned ''in payment or compensation for what had been taken.''

Based upon the record, we hold that there was a full and complete settlement between the plaintiff and the defendant and that the voucher is and was intended to be a payment in full of the amount found due and owing from the defendant to the plaintiff.   The judgment is affirmed.                              AFFIRMED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.